**EAST TENNESSEE IRON AND METAL COMPANY**

v.

**UNITED STATES of America.**

**Civ. A. No. 4470.**

United States District Court
E. D. Tennessee, N. D.

April 26, 1963.

Clyde W. Key, Knoxville, Tenn., for plaintiff.

J. H. Reddy, U. S. Atty., Chattanooga, Tenn., for defendant.

ROBERT L. TAYLOR, Chief Judge.

This is a suit against the United States to recover $10,000.00 damages for breach of contract in refusing to deliver sixty tons of rutile ore which plaintiff allegedly purchased at a public sale of surplus property by the Government. This Court has jurisdiction of a claim against the United States not exceeding $10,000.00 in amount. (28 U.S.C. Sec. 1346(a) (2)).

The Government defended on the grounds (1) that the ore in question had not been declared to be surplus property and was, therefore, not subject to be sold at public sale and (2) that the plaintiff failed to appeal from the Government's decision that the ore was not intended to be included in the sale (as provided in Clause 15—DISPUTES—of the General

Terms and Conditions of Auction Sales Contract) and is, therefore, precluded from maintaining otherwise.

At the trial the plaintiff stated there was no question of fact to be appealed to the Administrator and that this suit was, therefore, proper. Defendant did not seriously contest this assertion and the facts as developed at the trial were not in dispute.

Very briefly, the General Services Administration advertised a public auction sale of items at the former Cramet, Inc. plant in Chattanooga, Tennessee on October 4–5–6, 1960. The catalog which was issued in connection with this sale listed 1798 Lot Numbers, each of which was accompanied by a brief one sentence description. The item involved in this lawsuit was Lot No. 1518 succinctly described in the catalog as "TICL–4 Building w/contents." The face page of the catalog bears this legend:

"Inspection: September 19—till sale date
9 A.M. to 4 P.M. (excluding Sat. & Sun.)"

Plaintiff's witnesses stated that they made several trips to Chattanooga to inspect the items offered for sale. They testified that they went all through TICL–4 and observed some black powder in some bins. They did not know what it was, nor its value.

The auctioneers at the sale testified that they made a general announcement that no rutile ore was for sale, and this is not disputed by plaintiff whose witnesses testified that the announcement may have been made but that they did not hear it. The plaintiff entered a bid of $40,000.00 for Lot No. 1518, which was accepted for the Government on November 9, 1960 by the Administrator of General Services by John H. Matthews, Contracting Officer.

Subsequently, the Government discovered that the black powder in the bins in TICL–4 was rutile ore (a basic ingredient of titanium) which had not been declared surplus. Agents of the Government advised plaintiff not to remove the ore and it was, subsequently, transferred to another location by the Government on a weekend when the plaintiff did not have access to the property.

Plaintiff does not insist that it has a right to the rutile ore, only that it is entitled to its value.

On these facts, the Court is faced with two questions (1) a question of law, whether plaintiff is entitled to the value of the rutile ore which was embraced in the description of TICL–4 and (2) a question of fact, should the Court determine that plaintiff is entitled to the value of the rutile ore, what is its value.

The catalog stated that Lot No. 1518 consisted of "TICL–4 Building w/contents." This language, in the opinion of the Court, clearly comprehended the contents of the bins. It seems obvious that plaintiff in order to remove the bins would have to dispose of their contents and there is no ground for mistake in this assumption. Clearly no official of the Government was authorized to dispose of rutile ore and plaintiff does not contest this conclusion. As was stated by the Court in a similar situation in Turney v. United States, 115 F.Supp. 457, 459, 126 Ct.Cl. 202,

"Neither the buyers nor those who made the sale for the Government were aware, when the sale was made, that there was radar equipment among the supplies at the depot."

When the sale was consummated in this case by the "Acceptance of Government" on November 9, 1960 no one who made the sale for the Government was aware that rutile ore was a part of the contents of TICL–4. And the plaintiff did not know that the black powder included in its purchase was rutile ore. This was discovered some time later— just when does not appear. The important thing is that neither the buyer nor seller was aware at the time of the Acceptance that rutile ore was included in the TICL–4 property. The question is not whether there was authority to sell rutile ore. That question is beside the point. The Government forcibly demon-

strated by its strong arm removal of the ore that the authority did not exist. In the Turney case, the parties reached the same conclusion with respect to the radar equipment by negotiation. Here the Government asserted its claim not by reason, but by force.

Nevertheless, the question remains, as in the Turney case, whether plaintiff can recover the value of the ore removed from its constructive possession. If title to the rutile ore passed to plaintiff, then it may recover for its value. This is the holding both in the Turney case, supra, 115 F.Supp. at page 463, and in United States v. Jones, 176 F.2d 278, 288 (C.A. 9). In Turney v. United States, the Court had this to say, 115 F.Supp. at page 463:

"The Government asserts that the surplus property sale at the Leyte Air Depot did not pass the ownership of the radar equipment to Ranslow and Childers. If it did not, the corporation never acquired title to it and the plaintiff cannot recover. The Government relies on the directive of July 19, 1946, of the Pacific Air Service Command, relating to the declaration of property to be disposable surplus, which said:

" 'Under no condition will any radar equipment be declared to the disposal agency.'

"This directive was not disclosed to the public. The directive was violated, and the radar equipment here in question was, apparently inadvertently, declared surplus along with the other property at the Leyte Air Depot. In the contract of sale of the lot of property, the United States expressly disclaimed any responsibility as to what might turn out to be in the lot, but it warranted the title to the lot.

"Section 25 of the Surplus Property Act of 1944, 50 U.S.C.A.Appendix, § 1634 said:

" 'A deed, bill of sale, lease, or other instrument executed by or on behalf of any Government agency purporting to transfer title or any other interest in property under this Act shall be conclusive evidence of compliance with the provisions of this Act insofar as title or other interest of any bona fide purchasers for value, or lessees, as the case may be, is concerned. 58 Stat. 780.' "

In the General Terms and Conditions of Auction Sales Contract, attached as Exhibit "1" to the Government's Answer, Paragraph 6, states in part, "TITLE: Title to the items of property sold hereunder shall vest in the Purchaser as and when full and final payment is made, * * *" No question is raised by the Government that plaintiff did not comply with this provision. Plaintiff had title to this property. In the Jones case, the purchaser paid the price asked even though he knew he was getting not automotive equipment but marine equipment, a much more valuable item. The Government in that case was not permitted to upset his title even though he obtained an inequitable advantage in value. The case here is stronger, in that plaintiff did not know the value of the black powder it was getting.

■ We conclude that plaintiff obtained title to the powder, that the Government forcibly took it away from plaintiff and that it is liable for its value. There was testimony on behalf of plaintiff that it was trying to get 13 cents a pound for the powder, but that it would have taken 10 cents. No convincing basis for this appraisal of its value was established.

The Government on the other hand brought to the stand Clarence A. Fredelle, a mining engineer, who introduced as Exhibits 16 and 17 photocopies taken of page 5 of the publication E&MJ Metal & Material Markets for the dates September 29, 1960 and October 6, 1960, respectively, quoting the prices of rutile metal at $80.00 per short ton. This is the best evidence available to the Court of the value of the metal and the Court accepts it.

Plaintiff is given judgment for the value of 60 tons at $80.00 per ton or the principal amount of $4,800.00 with interest from the date the Government took possession of the ore.

Let an order be prepared in conformity with the terms of this memorandum.